The next case we're going to hear this morning is Global Innovative Concepts v. State of Florida. We'll hear first from Mr., is it Levesque? Levesque, Your Honor, yes. Levesque, all right. We'll hear from you first when you're ready. It pleases the court. My name is George Levesque with the Gray Robinson Law Firm. We represent the State of Florida, specifically the Division of Emergency Management. We're here today on another issue of sovereign immunity. In Sossaman v. Texas, Justice Thomas, writing for the majority, stated that immunity from private suit was central to sovereign dignity. What we're asking this court to do is respect the State of Florida's sovereign dignity, granted to it under the 11th Amendment, and reverse the lower court's rule. Hold it. You did this in your brief, and it would be helpful to us if we keep the concepts distinct. Sovereign immunity is, as Justice Kennedy explained in Alden, is inherent in the sovereignty of each state, and it's governed by principles of state law and whether they waive and so forth. Eleventh Amendment immunity is the right of a state not to be sued in federal court, and that is quite distinct, it seems to me, and there's a whole doctrine of principles of governing Eleventh Amendment immunity. But I think it would be helpful if you referred to it as Eleventh Amendment immunity, and sovereign immunity as the inability to sue a state. And I suggest to you that's a harder case for you in this case. I think the Eleventh Amendment immunity is really what's before us, but I'll leave that up to you. No, Your Honor, you're absolutely correct, and I appreciate the redirection there. We're here asking this court to uphold the state's Eleventh Amendment immunity under the U.S. Constitution. Briefly as to the facts, there is no dispute that the parties entered into at least one contract. That was for the purchase of 200,000 testing kits for $2.2 million. Can I ask you a question about the contract? I know the parties dispute the terms of a contract to the extent that they dispute venue and jurisdiction, right? The whole dispute, the whole reason you're here is because they claim that Florida agreed to be sued in the state and federal courts of North Carolina, and Florida says, no, we didn't. We have separate contract terms that superseded your contract terms. But aside from that, is there a dispute about the terms of the contract when it comes to the merits of the case? That first contract that everyone agrees happened? Yes, Your Honor. There's a dispute as to whether the $2.2 million that was paid under the allegations is a down payment on the second contract, whether that was altered to make payment on the first contract as part of the cancellation of the second contract. So could the district court make findings? Could there be jurisdictional findings in this case in a way that is not intertwined with the merits of the dispute? Would there be a way to resolve what appears to be a factual dispute about that goes to jurisdiction without getting tangled up in resolving the merits of the case? I think there is, Your Honor, because I think at bottom, when you look at the requirements to waive 11th Amendment immunity, this court and the U.S. Supreme Court has said there are two ways that a state can do it. By a clear unequivocal expression in statute or by participation in federal programs where Congress conditions the participation of that program on a waiver of sovereign immunity. Well, that's not quite true, though. There's a third way we know for sure, which is removal. The instant you remove, you've waived 11th Amendment immunity. Yes, where a state affirmatively makes asserts or uses a federal court to find relief, yes, in that instance, there is another third way as well. But here what we're talking, there's been no allegation of that. There's been no allegation of a federal program. We're here on whether the state waived immunity. And we don't believe, based on the execution by one employee of the state of Florida on a purchase order that is disputed, that he had the authority to waive the state's 11th Amendment immunity. Well, it doesn't even purport to. I don't care what form he looks at. None of them talk about immunity. And none of them talk about the 11th Amendment immunity. And it seems to me that we ought to be focusing on, if you agreed with me, we ought to be focusing on the 11th Amendment immunity, which is the right of a sovereign state not to be sued in federal court without its consent. That's correct, Your Honor. And nothing in that purchase order asserts. It doesn't talk about a federal court, and it doesn't talk about 11th Amendment immunity. There is a forum selection clause. That says you can be sued in their forum. It says you can be sued in North Carolina. That's correct, Your Honor. That's a venue provision, right? Yes, Your Honor. But it doesn't waive immunity. Nothing in the purchase order and nothing in Florida statutes and nothing in the executive orders that the trial court relied on. But the briefs, I must say, as I'm discussing this with you now, the briefs just blurred these issues irretrievably. I mean, you kept talking about venue provisions, state court sovereignty, 11th Amendment immunity. You barely talk about 11th Amendment immunity, and yet you're claiming it. But there's some important distinctions about all these things. Yes, Your Honor. I appreciate the distinctions, and I apologize that our briefing wasn't more clear. Certainly, at the trial court level, we were asserting a number of issues related to that, including whether North Carolina was the appropriate venue or we have an Alabama corporation. Can I clarify? Can I just ask a question to clarify your position? When I asked about the dispute, you pointed to, you kind of backed up and kind of made an argument that as a legal matter, there's just no way Florida could have waived its 11th Amendment immunity. Do we have to hold that a state cannot waive 11th Amendment immunity by consenting to suit in a federal court in a contract free to win? Your Honor, I think under the circumstances that we're dealing with, our argument is, and it might be a little more nuanced. Why, for example, couldn't we just say that venue provision is not part of the contract under the UCC? So regardless of whether you could waive sovereignty through a venue provision, the contract between you and them does not have this venue provision. Ergo, you still have sovereign immunity. Why couldn't we say that? I think that would be one reasonable outcome. That's the point of my question. The point of my question is I asked a factual question and you answered with a legal argument, which is fine. One way for you to win may be to say, as a legal matter, it's just constitutionally can't happen that a state could ever waive its 11th Amendment immunity in a contract that its officer signs saying you can sue us in federal court. Maybe you could win as a matter of law on that. But it would seem like even if we didn't say that, there is a factual issue here about whether Florida actually did that as a factual matter and that that might also be something you want to consider arguing about. That would. And what I would note is there's a case, we cited it for a different premise in our briefs, but the BAE case that dealt with a forum in Korea. The Fourth Circuit's discussion in that case, when it was looking at a forum clause, forum selection clause, where the forum selection clause was permissive and not mandatory, and for it to be mandatory under that BAE case. That BAE case required expressive, exclusive language. So only exclusive, those types of words. None of those types of words are here. You know, I'm still confused by your argument and your responses to these questions. It seems to me it's clear as a bell a sovereign can waive 11th Amendment immunity by participating in a federal proceeding, voluntary proceeding. It can initiate in federal court or it can continue as a defendant in federal court without objection. And there's tons of cases suggesting that it can waive. That isn't the issue here as I understand it. Because you did raise the objection initially and you're entitled to. The second question of fact in this case is whether Florida in fact waived its 11th Amendment immunity. And I must say, and you can correct me, I did not see any place in this record where Florida waived its 11th Amendment immunity explicitly. And that's what's required. Correct me if I'm wrong on that. No, Your Honor, you're absolutely right. Then why do we go into all these remote cases that are talking about issues of venue and voluntariness and so forth? You start on 11th Amendment immunities, the sovereign enjoys immunity. And the question is who has the right to. And usually the legislature confers power to it. The Ford case suggested that the Attorney General in selecting a forum has the right authority on behalf of the sovereign to waive 11th Amendment immunity. And then the cases are that if the state continues litigating in federal court without objection, gets halfway through or two-thirds of the way through, it constitutes a waiver. But at the outset, it doesn't have to be sued in federal court. It has the privilege not to be sued in federal court unless it's waived or Congress abrogates it or it participates in some plan implicitly in waiving it. I agree with Your Honor's assessment, and I'll take a clue there. To the extent that there is nowhere in the record where the state of Florida has waived 11th Amendment immunity anywhere. And we would ask this court to observe that and reverse the lower court's ruling. If there are no further questions. Oh, I have one. But aren't there, are you aware descriptively speaking, there are a number of cases, not Fourth Circuit cases, I freely admit. There are cases that say if the sovereign enters into a contract that has a venue provision that says that disputes shall be resolved in the state or federal courts of state acts, there are cases that say that waives sovereign immunity, right? There are, in fact, I'm aware of a southern district case in Florida. How about a federal circuit case from 2007? Yes, sir. Okay, so we would actually have to create a circuit split to say that. Potentially, yes, sir. Okay. And I guess the other question is about the authority issue. The reason I asked you about Lapidus is I understand there's Supreme Court authority that says only the legislature can waive sovereign immunity. I don't know how that survives Lapidus because like in Lapidus, they said you've waived Eleventh Amendment immunity. I'm sorry, Judge Niemeyer. They said by removing that case from state to federal court, you have waived Eleventh Amendment immunity. And there was no discussion in that case about whether the person who removed had legal authority under state law from the legislature to do that. They just said you're a state agent who invoked the jurisdiction of the federal court. If you need to have a fight within the Minnesota state government about whether the person who did that was supposed to do that, you can do that. But as the federal courts are concerned, that's a waiver. So why isn't that a problem? Well, I think if you look what was going on in Lapidus, the officer that removed that was the state's attorney general. Right, but it wasn't the legislature saying the state's attorney general can remove that case to federal court. Well, and to the extent that the court didn't, I would, the court didn't address that officer's authority, what I would presume being familiar with at least if the attorney general works the same way that Florida attorney general works, that the attorney general is imbued with authority to litigate in both state and federal courts and can make those decisions as a matter of their executive authority. That would be my response there. Here, I thought the Supreme Court addressed this explicitly in the Ford case and recognized that the sovereignty has to convey at the legislature, but that the attorney general who conducts the litigation on behalf of the sovereign makes selection choices that can waive because he has the authority to decide that. And so removal would be invocation of a federal court and implicitly waives, or if the state brought suit in federal court. I think there's no difference between those two. There's a waiver, and that's within the authority of the attorney general to do. I don't think it's within the authority of the governor to do, but the attorney general has conferred the power to litigate on behalf of the state and to make decisions about where to litigate and how to litigate. I would agree with that, Your Honor. I didn't intend that question to be in any tension to judge Hyden's questions. I'm just really focusing or trying to focus on the lack of clarity about the positions being taken by the parties in this case. And it seems to me that when we're talking about waiver, it has to be pretty explicit if it's going to be done contractually or by law. And if it's by conduct, it has to be the state invoking the federal court and proceeding in the federal court and litigating in the federal court where there would be an implicit waiver. I think that's absolutely correct, Your Honor. And in this instance, we're not talking about something that implicates a high-level officer, potentially a constitutional officer's executive authority. What we're talking about is what the state has delegated to the agencies. And when you look at what the state of Florida has delegated to its agencies, it does have the authority to contract. But nowhere has it granted the authority to waive 11th Amendment immunity. All right. Thank you. Mr. Lee. Good morning. May it please the Court. My name is Brian Lee and I'm representing the appellees in this case. I want to focus, as the Court has, on 11th Amendment immunity and that issue. That was a smaller issue that was brought in front of the district court, but that is the issue that's on appeal today. FDEM argues in this appeal that it is still conferred immunity under the 11th Amendment from suit in federal court. And what they say is that there's nowhere in the record, and you just heard it, where the state of Florida said that they were consenting to be sued in federal court. Does the Supreme Court require that? In other words, if you're going to rely on their waiver, setting aside the conduct if they invoke a federal court or remove the federal court, but setting that aside, if you're looking for a waiver in contract or something, doesn't it have to be an explicit waiver of 11th Amendment immunity? It has to be clear. The case that you talk about, it's got to be clear, it's got to be explicit in the sense that it can't be sort of an implicit something. Never implicit. And so our argument to the court is that this is clear and it is explicit. Can I just take a step back before? Is it common ground in this case that whatever the right answer to this case, the way the district court looked at this question is just totally wrong? Because the district court said they wouldn't have sovereign immunity in state court, ergo they don't have 11th Amendment immunity in federal court, and with respect to the district judge, that is just flat out wrong, right? That's not the issue, certainly, that was brought here. But that was the basis on which the district court said there's no 11th Amendment immunity. It was. I think as I look at the district court order, the district court, and maybe we've done the same thing, has talked about some 11th Amendment immunity facts and principles. The district court said they wouldn't have sovereign immunity in Florida state court, ergo they don't have 11th Amendment immunity. That's basically what the district court said, right? That is, but what the court also did was it talked about the ability of the governor and the executive director to be able to make provisions about getting COVID test kits and how that flowed into the contracts that we have, the purchase orders. And so that is part of this 11th immunity synopsis, right? What the state of Florida has said is that we didn't give anyone the ability. That's essentially what they have to say. We didn't give anyone the ability to waive our 11th Amendment immunity. No, they don't say that. They say they did not. Did not, okay. I mean, the question is, I'd like you to point to where the state of Florida consented to 11th Amendment immunity in this case. It's in the purchase orders. It doesn't talk about 11th Amendment immunity at all. It doesn't say the words 11th Amendment immunity. Well, that has to say 11th Amendment immunity, according to Supreme Court cases. I don't believe that it has to say those words, Your Honor. It has to say those words explicitly. It says in the choice of law provision, all disputes with regard to this agreement shall be brought and heard either in North Carolina State Courts or the Federal District Court for the Eastern District of North Carolina. When the state of Florida signed that purchase order, that's what they were saying. That is, in my mind, an explicit, they are explicitly saying that we are going to, all disputes, we're going to be sued in the North Carolina State Court or in a Federal District Court. Does it say that we're waiving our sovereignty, our 11th Amendment sovereignty? It doesn't. But what it says is what 11th Amendment immunity does. It keeps them from being sued in a Federal Court. By signing this, two, actually, purchase orders, they are saying we are going to be sued in that Federal Court. Okay, that assumes that this clause is part of your contract, and I guess could you address, I'll just throw out what is my current hypothesis and tell me if I'm wrong. It strikes me that your draft agreement insisted that we're going to do this, and their stuff insisted it's going to be in Florida State Court. And so then I looked at the UCC, and the UCC, is this a material term? It seems like this is obviously a material term. Like where we're going to have the lawsuit is clearly a material term under the UCC. So then the UCC seems to tell me that because the two of you don't agree, both of those provisions drop out, neither one of them is part of your contract, and now we're to a contract that doesn't say anything about forum, and if that's true, then it seems they obviously have sovereign immunity. Why am I wrong about that? Right, and I think you're wrong about that respectively, Your Honor. I'm asking you why I'm wrong about it. Tell me why I'm wrong about it. With all of the arguments that are being made by the state as to these are provisions, these are terms and conditions that we have, there is nothing in the record that says that those were assented to by my client. Oh no, no, it is my premise that you never agreed to them. My premise is that you proposed it's going to be North Carolina, and they never agreed, and they proposed it's Florida, and I agree. You never agreed. I'm not suggesting you ever agreed to that. So then, but what the UCC tells me is that because neither of you agreed to either one of each other's terms, none of those terms become part of the contract, so then we have a contract that says nothing about where any disputes will be resolved. That's my hypothesis. Right, and what I would say, Your Honor, is that the only evidence in this record is that the state of Florida agreed to the terms that is central or my client's by assignee. Except they said, like, we agree, but you're going to have to register using our form, and our form, if you register using it, is going to say you agree to Florida, so then that doesn't really seem like they agreed. Registering, and this is obviously the argument we make, registering with a form as a vendor, does that mean agreeing to terms and conditions? Didn't you also use the Florida Marketplace? Yes, as a vendor. You have to register as a vendor within the Florida Marketplace to have contracts with the state of Florida. It's kind of a… I mean, if anything, it strikes me, candidly, it strikes me they might have a stronger argument that you agreed to their clause than you have an argument that they agreed to yours, because arguably, by doing that, you agreed to the venue provision. I would disagree because of the fact that what the evidence was in front of the district court when making the decision was that the purchase orders were agreed to by the state. They agreed to…the terms and conditions were attached as Exhibit A to the purchase order. It's very clearly set out in the first…I think it's even the first paragraph. It says, buyer and seller agree that the terms of the sale set forth in this purchase order are subject in its entirety to the terms and conditions of sale attached here to as Exhibit A. Exhibit A is the essential, and it's called essential, diagnostics term and condition of sale, which include the provision that I read. How did Florida respond to that? What did they… They consented to it. In what manner? I believe that the first purchase order was actually signed by a member of the state. Was there any suggestion that there had to be registration? I believe that that…and I might be wrong about this, Your Honor. I believe that came with the second purchase order. And so I would agree with the court that when we're talking about what they are saying as far as, well, we wanted you to…we think that you had to be on our terms and conditions. We don't. That is more in the second part of it, the second purchase order. We still believe that there was not anything in there because it's the same purchase order that was agreed to by the state. So there is…I guess the bottom of my argument is that the exhibits that you see in the record show that the state agreed to purchase orders that had as the exhibit A essential terms and conditions. There is nothing within the record that has the state's terms. I was just wondering where this registration…I thought I saw it somewhere, the registration, that they still had…you still had to be registered at some point. And I… That's correct. And actually… Was that in the documentation? It was in the documentation. It was part of, I believe, the memorandums that were done and… If that's so, if it's subject to the registration, it seems to me, then all the questions posed by Judge Heitens come into play. That is, the registration has a bunch of requirements, and those requirements sound like they're conditions precedent to dealing with the state. They are, but I believe from our standpoint, I think the facts bear this out, although, again, I would admit that facts haven't been fleshed out. But there are terms of use that are set up within that My Florida Marketplace, the terms of use of the website and how you're supposed to do the website. The terms and conditions that the term of, I guess, art that Florida is using is something different. It is something that, and I think it's actually in the record, it is a lengthy terms and conditions from the state. And I believe that this court can look just… But does every person who register have to agree to those terms and conditions? I do not believe so. I believe that the website is for the website. I'm not talking about the registration. I'm not talking about the site. Okay. My Florida, whatever, Marketplace. Marketplace. Yeah. It says you have to register with that, right? That's correct. Now, when you finish registering, have you agreed, what have you agreed to? You agreed to the terms of use of the website. And then… Now, have you agreed to where lawsuits are to be filed? I do not believe so. I believe that the terms and conditions are a separate document. It's part of the, typically it's part of the negotiation. Wasn't the purchase order that was signed? I mean, didn't, I thought everyone understood that Florida responded by signing and then listing additional terms and conditions. MFMP comma federal clauses, right? So, you guys proposed your terms. Florida responded and said, yeah, but also our terms. Well, they were, I think this is the second one, but even if… No, it says March 22nd. That's the first one, right? Just make sure. I just want to make sure I'm accurate. I just, this is another sort of piece of evidence in the… March 22nd, right. In the factual dispute here between the parties about whose terms apply. Yeah, right, and… We don't have to just rely on this hypothetical marketplace. I mean, they say it right there. Well, I think you're talking about, I guess, the printout that was from, that's what I understand is an internal printout with the state of Florida, but that's not something that Essential agreed to. No one is saying you necessarily agreed to it, right? No, no, I understand that, but that wasn't part of the purchase. The purchase order says what I've already said, but what it also says in it, which is what most contracts say, is any oral or written representations outside of this agreement… Sure, which is what Florida's say too. They're saying these supersede any other possible terms and conditions that somebody might have agreed to, right? Correct. These are irreconcilable. That is correct, but I think what you have to do to get sort of to this battle of the forms is there has to be something in the record, and this is my opinion, where Essential agreed to those terms. No, the whole point of a battle of the forms is the parties did not agree. You get to battle of the forms when one person says, I agree so long as X, and the other party says, I agree so long as not X. And one option, right, and this was closer to the common law of contracts, one option is to say there is no contract in that situation, because the parties literally don't agree to X or not X, and what the UCC comes along and says, no, that's not true, because the parties clearly meant to contract, and as long as you have a price and a quantity, I think it's quantity, it's like quantity, that's all the UCC requires to have a contract, and so the UCC says if two parties say we have to litigate in North Carolina and the other party says we have to litigate in Florida, what the UCC says is that neither of those become part of the contract. They just both drop out, and there is a contract. So I fundamentally think you're wrong about that you have to have agreed to this. The whole premise of the Battle of the Forms is that you, because if you agreed, then their term would be part of the contract. I agree, yeah, if we agreed, then obviously we wouldn't be here. I think, though, when we look at what the district court had in front of it, the district court had purchase orders that were signed and agreed to by the state. They had the state saying, yeah, we did sign that, but also we have this form that says in sort of a notes column that our terms and conditions. Right. That's the only evidence, I guess if you call it, that those terms and conditions were part of the deal, and I would just… Well, it's the same as yours. I mean, both sides are insisting on their own terms and conditions. Well, our side was insisting on terms and conditions, and this was done very quickly. And they say, we agree, but subject to our terms and conditions. So you get to the problem, you get to basically an impact. And I guess my argument to that, Judge Neumeier, is that there is nothing that says, yeah, we're going to agree to that, but you also have to agree to ours. The form that we see in the record that they're relying on, it doesn't say that. Where is it in the record? Do you have the page? Is this J137 you're talking about? J137? I think so. Let me get to it real quick. I was going to look at it myself, actually. I think it's the language that starts with, vendor is not in MFMP. We are issuing this paper PO in order to secure the supplies. A formal PO will also be issued through MFMP once the vendor is fully registered. That's right. Yeah, and you're correct. And so when we're talking, there's nothing within the comments. Obviously it does, and I will say, it says terms and conditions, MFMP, federal clauses. It does say that. But when we look at the comments, what it was saying is that you're not in our vendor system. And so we can't, and I think that was the reason, we can't issue payment to you as a state of form. Well, but then it says a formal purchase order will also be issued, which suggests that this is not actually the purchase order. This is like the placeholder purchase order. They seem to be saying that thing that's going to come later will be the purchase order. But it wasn't ever done. There was never anything, and the parties were operating off of that contract. It's very clear that the parties were operating off of that contract. Essential went and got the kits. You registered, didn't you? I'm sorry, yeah. To that document, you registered. And the registration has terms and conditions attached to it. And that, frankly, your honor, is what I do not know for certain, because I don't think it's in here for certain. I don't know whether... On page 148, what are those? Those are terms and conditions, your honor. And what are they there for? What are they attached to? They're not attached to anything. They're attached to the registration. You agree to those terms and conditions, right? No, I don't believe they're attached to the registration. It's a separate exhibit, your honor. The registration form starts on JA 139 and 140. And I'm looking through it again just to make sure there is nothing in here in this registration form. On page 141, it says, My Florida Marketplace, Terms and Conditions. Correct. That's the website's terms and conditions. It doesn't matter where it comes from. These are the terms and conditions of registration, right? No, what I'm saying is those are different things. The terms of conditions, i.e., the terms of use for the My Florida Marketplace, is different than the terms and conditions that you see in the next exhibit. It says, Purchase Order, Terms and Conditions. Well, yes, that's what the state of Florida says. Yeah, but my point is the document that Florida issued to you in response to your purchase order had the language at the bottom that we just recognized. Correct. And that clearly anticipated your registration in the marketplace. That is right. And the marketplace registration includes your agreement to terms and conditions. That's where the disconnect comes, Your Honor, is that the terms and conditions, the Florida My, what is exhibit F, those were never verified in any way as being the terms and conditions on the My Florida Marketplace. They're talking about purchase order conditions. Well, that's exactly what we're talking about. We are, of course, but we believe that there is a difference between the terms that… Are you making a point that when you register in the My Marketplace, you're not agreeing to the terms and conditions? Of the purchase order, no. That's correct. Because the purchase order is a solely separate terms and conditions from what the Florida Marketplace. That was what was argued below. That was what was argued here. And so, again, is there a factual robust record in that? I would guess no, because obviously we don't have affidavits and things of that sort from people that say this is what's on there. But that was what was argued to the district court. And the district court found that didn't look at that part. It said that that was not part of it. And so when we look now at what this court has, this court has a purchase order that has a choice of law provision that the state of Florida specifically said they can be sued in federal district court. That is clear and unambiguous under any reading of any of the cases that we talk about. And it doesn't – and I don't – the cases that I've looked at say that, yes, you have to clear and unambiguously say that. But it doesn't say saying it, saying 11th Amendment of the Union is the only way to do that. And I would posit that this was a way that the state of Florida was specifically saying we're waiving that. They also agreed to be sued in – was it? North Carolina. Wake County? That's correct. North Carolina State Court? It was, yeah. Does it seem implausible to you that they would have meant to do that? That the state of Florida would say, please, the only place you can sue us on this contract is in state court in a different state? Doesn't that seem dubious, hard to believe? If this were a normal situation, it would perplex me, frankly. But this was not a normal situation. This was in the height of the COVID-19 pandemic. The state needed those kits. Essential had access to the kits, was one of the only ones that had access to those kits. And you could see by the, frankly, furiousness of how quickly this was done. There's nothing in this record that shows a purchaser in a couple of days that Essential all of a sudden agreed to everything that the state of Florida was going to do. There's nothing in the record that shows that. And that is the reason why the state of Florida agreed to it, was because this was a dire situation. They allege that when you register as a matter of the administrative code of Florida, that when you register, you agree to the terms and conditions. That's what they put in their briefing. Yeah, I'm asking you, that's what they contend. What's your response to the fact that the regulation, they assert the regulation requires you to agree to the terms and conditions? And I think we put it in our brief that we contend that it only says when you register that you are agreeing to the terms of use of the website and not terms and conditions of the purchaser. But isn't there a Florida regulation that defines what terms of use means? Are you familiar with Florida Administrative Code 60A-1033B?  I'm not familiar with that particular code, but terms and conditions, sure, there could be terms and conditions, but terms of use of a website, is that what you're referring to? I believe it defines what terms of use means, and terms of use is defined to include their form selection clause. That wasn't put, I think, in their brief. I don't know. I have not seen it. And so I'm not aware of that. I'd have to review it and research on it to see how that dynamic goes with the marketplace. All right. Thank you, Mr. Thank you, Your Honor. Yeah. All right. Let me ask you at the outset. Why isn't the agreement to be sued in the Eastern District of North Carolina a waiver if their form governs? Your Honor, because I think under the circumstances that the purchase order was executed and the additional information that was provided in terms of the state's purchase order, which was JA-137, that was issued the very same day, that that would indicate that the state never intended to assent to suit in federal court. Well, you didn't quite respond to my question, because my question had the hypothetical that if their form governs, you're arguing what form governs. But I'm saying if their form governs, is there an explicit waiver to be sued in the Eastern District of North Carolina? No, Your Honor, I don't believe there are, because there was no clear and expressed unequivocal waiver that is reflected in that language. How do you address the language that Mr. Lee quoted, which was you could be sued in state court in Wake County, North Carolina, or in the federal district court for the Eastern District of North Carolina, located in Raleigh? Is that not explicit enough? No, Your Honor, I don't believe it is. Federal district court is federal court, isn't it? It is, Your Honor. But if you look at at least the nature of the language, you've got waiver of warranties that are at least in all caps, and that drawing specific attention to those types of things. This was a form selection clause that, to Judge Rushing's point earlier, or her question earlier, also assented to suit in Wake County, North Carolina. We don't believe any, either of those were necessarily the intention of the state of Florida, and I think that's reflected both. Well, you're missing my question. I'm not talking about whether Florida intended it or whether Florida agreed to it, because we recognize there's a battle of the forms, there's a problem in contract interpretation here. But I'm saying if we look to their purchase order, is that language sufficiently explicit to waive Eleventh Amendment immunity? I don't believe so, Your Honor. And why? The test that the Supreme Court has put out for this is stringent, and it requires a statutory waiver. It requires either participation in one of the federal programs or one of the other requirements. There is no such authority here to get to that point. Would you agree that if a state filed suit in federal court for whatever purpose, that it then waives Eleventh Amendment immunity? In that particular example, that would be the Lapidus case? You agree with that? I agree with that, yes. And you also agree that if a state removes a case from state court to federal court, it therefore elects the federal court and waives Eleventh Amendment immunity, right? That's correct, Your Honor. And you also agree that if a state continues litigating as a defendant in federal court up to judgment, it waives, implicitly it waives Eleventh Amendment immunity? Yes, Your Honor, and I would point out in this case... You don't think that's explicit enough? No, Your Honor, I don't. I don't understand why. For starters, there are other reasons that go to it, but assuming that that is the forum selection clause that applies, I don't think it's expressed enough under the circumstances. What more should be said? I think it would be a clear expression that they waive sovereign immunity and waive Eleventh Amendment immunity, because that's, I think, what it would take to be in either North Carolina court, state court, or federal court. I would just, in closing, I would draw a couple of points to points in the record. Justice Hytens, your comments related to Florida Administrative Code 60A1.033 makes expressly clear that for a vendor to receive payment, that they must register in the My Florida Marketplace, and when they do that, they must also agree to the terms and conditions or the terms of use that are defined to include both the forum selection clause. I think that's clear from... He argues on that. He argues that the terms and conditions refers to the terms and conditions on using the site, the Internet site, as opposed to the terms and conditions of the purchase order. I think the language of the rule makes clear that it incorporates the terms and conditions that a vendor agrees to. And that's spelled out both in the rule and in the link that's placed in the rule that has those terms and conditions. It's not just consent to using the site. It's the terms and conditions that apply to vendors making use of that system. All right. Thank you very much. I'm good. We'll come down and agree counsel, and then we'll proceed on to the last case.
judges: Paul V. Niemeyer, Allison J. Rushing, Toby J. Heytens